IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD SATISH EMRIT,                      3:16-CV-01854-BR

       Plaintiff,                      OPINION AND ORDER

v.

MARION COUNTY HOUSING
AUTHORITY (MCHA) and U.S.
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT (HUD),

       Defendants.


RONALD SATISH EMRIT
4529 Townhall St.
Las Vegas, NV 89115
(301) 537-8471

       Plaintiff, *Pro Se*

JEFFERY J. MATTHEWS
Harrang Long Gary Rudnick, PC
360 E. Tenth Avenue
Suite 300
Eugene, OR 97401-3273
(541) 485-0220

       Attorneys for Defendant Marion County Housing Authority

**BILLY J. WILLIAMS**
Acting United States Attorney
**TIMOTHY W. SIMMONS**
Assistant United States Attorney
405 E. Eighth Avenue
Suite 2400
Eugene, OR 97401
(541) 465-6740

> Attorneys for Defendant U.S. Department of Housing and
> Urban Development

**BROWN, Judge.**

This matter comes before the Court on the Motion (#10) to
Dismiss of Defendant U.S. Department of Housing and Urban
Development (HUD).  For the reasons that follow, the Court **GRANTS**
HUD's Motion and **DISMISSES with prejudice** Plaintiff's claims
against HUD.


## BACKGROUND

On September 20, 2016, Plaintiff Ronald Satish Emrit filed a
*Pro Se* Complaint in this Court against HUD and Marion County
Housing Authority (MCHA)[1] in which Plaintiff alleges he suffers
from various mental disabilities.  Plaintiff alleges he applied
for Section 8 housing "within the last three years" through MCHA.
At some point Plaintiff received a letter from MCHA in which it
advised Plaintiff that it had placed him on the waiting list for

---

[1] On February 23, 2017, Plaintiff voluntarily dismissed with
prejudice his claims against MCHA.  *See* Docket #17.

2 - OPINION AND ORDER

Section 8 housing.  Plaintiff alleges his placement on the waiting list violates his rights under the Equal Protection, Due Process, and Privileges and Immunities Clauses of the United States Constitution; the National Housing Act (NHA), 12 U.S.C. § 1701, *et seq.*; the United States Housing Act (USHA), 42 U.S.C. § 1437f; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101; and the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq*.  Plaintiff also alleges common-law claims for negligence, intentional infliction of emotional distress (IIED), and breach of contract related to his placement on the waiting list for Section 8 housing.  Plaintiff seeks damages and the following injunctive relief:  that Defendants "be required to make accommodations for the plaintiff's disabilities" and "Section 8 should be absorbed and administered by the [MCHA]."  Compl. at 17.

On December 22, 2016, HUD filed a Motion to Dismiss Plaintiff's claims against it on the grounds that Plaintiff failed to state a claim and that this Court lacks subject-matter jurisdiction.  The Court took HUD's Motion under advisement on February 3, 2017.

## STANDARDS

I.  **Dismissal for Lack of Jurisdiction Pursuant to Rule 12(b)(1)**

Plaintiff has the burden to establish that the court has

subject-matter jurisdiction. *Robinson v. Geithner*, 359 F. App'x 726, 728 (9th cir. 2009). *See also Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the plaintiff's jurisdictional allegations. *Rivas v. Napolitano*, 714 F.3d 1108, 1114 n.1 (9th Cir. 2013). The court may permit discovery to determine whether it has jurisdiction. *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). When a defendant's motion to dismiss for lack of jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)(citation omitted).

## II. Dismissal for Failure to State a Claim Pursuant to Rule 12(b)(6)

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955 [(2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer

> possibility that a defendant has acted unlawfully.
> *Ibid.*  Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"  *Id.*
> at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell Atlantic*, 550 U.S. at 555-56.  The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

A *pro se* plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Thus, the Court has an "obligation [when] the petitioner is *pro se* . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."  *Akhtar v. Mesa*, 698 F.3d at 1212 (quotation omitted).  "[B]efore dismissing a *pro se* complaint the . . .

court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Id.* (quotation omitted).  "A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Id.* (quotation omitted).


## **DISCUSSION**

### I.   **Section 8 Housing Program**

The Section 8 program is a tenant-based, housing-choice voucher program (HCV program) authorized under the USHA.  With respect to the HCV program, the USHA authorizes the Secretary of HUD "to enter into annual contributions contracts with public housing agencies," who, in turn, "may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with" the HCV Program.  42 U.S.C. § 1437f(b)(1).  "The HCV program is generally administered by . . . PHAs [public housing authorities].  HUD provides housing assistance funds to the PHA.  HUD also provides funds for PHA administration of the program."  24 C.F.R. § 982.1(a)(1).  Thus, the HCV program is funded by HUD but administered by local PHAs.  42 U.S.C. § 1437f(b)(1).  To participate in the program, families apply directly to the PHA.  If the PHA approves the tenancy, PHA then

enters into a contract "with the owner [of the rental unit] to make rent subsidy payments on behalf of the family." 24 C.F.R. § 982.1(a)(2). The family pays a portion of its income as rent, and HUD reimburses the PHA for the rental subsidies provided to housing-unit owners through annual contributions contracts. *See* 42 U.S.C. §§ 1437f(b)(1), 1437f(o)(2)(A), and 24 C.F.R. §§ 982.1(a)(3), 982.151.

PHAs develop a "written administrative plan that establishes the local policies for administration of the [HCV] program." 24 C.F.R. § 982.54(a). HUD regulations require the PHAs to "administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act." 24 C.F.R. § 982.53(b)(1). HUD is not required to approve the PHA's plan.

PHAs also develop their own policies for admission to the HCV program and administer their own waiting lists. 24 C.F.R. § 982.202. HUD regulations specifically provide "[a]n applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs." 24 C.F.R. § 982.202(c). In fact, PHAs are permitted to establish preferences designed to meet the needs of their local areas. 24 C.F.R. § 982.207(a). PHAs also determine when to open or to close their waiting lists. 24

C.F.R. § 982.206.

## II.  Dismissal for Failure to State a Claim

HUD moves to dismiss all of Plaintiff's claims on the ground that Plaintiff fails to state a claim against HUD.  Specifically, in his Complaint Plaintiff does not allege any actions of HUD that support Plaintiff's claims.

As noted, Plaintiff alleges "he received a letter from [MCHA] indicating that he has been placed on a waiting list with regards to Section 8 housing." Compl. at 4.  Plaintiff, however, does not allege HUD took any actions related to Plaintiff's placement on the waiting list.  In fact, the only reference to HUD occurs in paragraph 20 of Plaintiff's Complaint in which Plaintiff alleges he "has also applied to obtain Section 8 housing from the Lycoming Housing Authority in Pennsylvania in addition to the Arasota Housing Authority and other housing authorities throughout the United States that receive funding from [HUD]."  Thus, the only act by HUD that Plaintiff specifically references is the fact that HUD provides funding to PHAs, including MCHA.

Courts that have addressed the issue have concluded the mere fact that HUD funds a PHA does not result in HUD liability for the PHA's housing decisions.  *See, e.g., Capitol Blvd. Partners v. United States*, 31 Fed. Cl. 758, 761 (1994)("HUD's grant of funds and even extensive supervision over [a PHA] is not

sufficient to create an agency relationship" between a contract bidder and the government "even if the local [PHA] is nothing more than a conduit for federal funds.")(citing *Housing Corp. of Am.*, 468 F.2d 922, 924 (Ct. Cl. 1972)). *See also Correlated Dev. Corp. v. United States*, 556 F.2d 515, 522 (Ct. Cl. 1977)(same); *Marshall N. Dana Constr. v. United States*, 229 Ct. Cl. 862, 862-64 (Ct. Cl. 1982)(same).

As noted, HUD regulations specifically provide "[a]n applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs." 24 C.F.R. § 982.202(c). It is at the sole discretion of the PHA to determine whether to place an applicant on a waiting list and to determine the applicant's position on that list. *Id.* Thus, courts have concluded when a PHA either fails to place an individual on a waiting list or does not accord an individual a preferential place on the waiting list, it does not give rise to a cause of action. For example, in *Castro v. City Housing Authority* the plaintiff, who suffered from "multiple serious emotional and physical disabilities," brought an action against a PHA when it "failed to put [the plaintiff] at the head of the applicant list" for a Section 8 housing voucher. No. 10-403 (DRD), 2010 WL 1849997, at *1 (D.N.J. May 7, 2010). The plaintiff moved for an injunction compelling the defendant "to provide him immediately,

9 - OPINION AND ORDER

an exemption . . . from the defendant's . . . waiting list" and
to give him a housing voucher. *Id.* The court denied the
plaintiff's motion noting HUD regulations do not provide
applicants with the right to a particular position on the waiting
list, and the plaintiff did not identify any provision in the
PHA's voucher plan that required the PHA to move individuals with
disabilities to the head of the waiting list. *Id.*, at *5. *See
also Kabando v. Prince William Cty Office of Housing and Human
Dev.*, 1:15cv1040(JCC/JFA), 2015 WL 7283116, at *4 (E.D. Va.
Nov. 17, 2015)(granting the defendant's motion to dismiss the
plaintiff's claim for "deprivation of an entitlement or property
under 42 U.S.C. § 1983" on the ground that the plaintiff failed
to establish that he had a constitutionally protected property
interest in a Section 8 housing voucher and noting "courts have
routinely held that because of these funding limitations and the
discretion required in administering housing voucher programs,
housing vouchers provided by the [HUD] Program[s] are not
entitlement benefits."). *See also Montgomery v. Housing Auth. of
Baltimore City*, 731 F. Supp. 2d. 439, 441 (D. Md. 2010)(same);
*Phelps v. Housing Auth. of Woodruff*, 742 F.2d 816 (4th Cir. 1984)
(preference provisions of the Housing Act do not give rise to
constitutionally protected rights enforceable under § 1983).

Accordingly, the Court concludes Plaintiff cannot bring a
claim against HUD under the circumstances of this case because

HUD regulations specifically provide applicants do not have "any right or entitlement . . . to any particular position on the waiting list" and discretion is reserved to the PHAs to determine whether and where to place an applicant on the waiting list.

Finally, Plaintiff has filed complaints in numerous other districts in which he brings claims that are nearly identical to those in the Complaint that Plaintiff filed in this Court; *i.e.,* claims against HUD based on local PHAs' placement of Plaintiff on their waiting lists.  Those courts have dismissed Plaintiff's complaints for, among other things, failure to state a claim. *See, e.g.,* Def.'s Mot., Ex. 8 *(Emrit v. Arcadia Housing Auth.,* No. 5:16-cv-599-Oc-CEMPRL, at 5 (M.D. Fl. Oct. 17, 2016)); *Emrit v. S. Nev. Reg'l Housing Auth.,* No. 2:16-cv-2701-MMD- VCF, 2016 WL 7743037, at *2 (D. Nev. Dec. 5, 2016), *Report and Recommendation adopted by* No. 2:16-cv-02701-MMD-VCF, 2017 WL 126113 (D. Nev. Jan. 12, 2017); *Emrit v. Providence Housing Auth.,* No. 16-543S, 2016 WL 7638117, at *3 (D. R.I. Oct. 25, 2016), *Report and Recommendation adopted by* No. 16-543S, 2017 WL 52572 (D.R.I. Jan. 4, 2017).  The District of Rhode Island court also specifically noted in its opinion:

> In addition to the substantive failure of the Complaint, the Court must address the Plaintiff's status as prolific *pro se* litigant, who is not new to this Court.  In his previous cases filed in this Court, Plaintiff was Ordered to "cease from using the e-mail address of the Court, any member of the Court or court employee" due to the

voluminous emails being sent to the Court.
Additionally, he was Ordered to refrain from
filing any motions in his other case, "in view of
[his] penchant for filing numerous frivolous
motions." These are unusual but relatively minor
sanctions.

The District of Nevada has taken the additional
step of declaring Plaintiff a "vexatious filer."
That Court noted that Plaintiff and his
ex-girlfriend had filed numerous lawsuits
throughout the country and in Nevada and that by
their own admission had declared that they were
"looking for a liberal court to lend a sympathetic
ear with regard to [their] plight and financial
woes caused by a long history of bad luck and a
series of unfortunate events." That sentiment is
particularly apt, because a search of the national
PACER system indicates that the issues presented
in the present case also appear to be raised in
four other Federal District Courts and that each
case was filed within a two-week time period.
Those other cases are C.A. No. 16-2022 in the
Middle District of Pennsylvania, C.A. No. 16-655
in the District of Arizona, C.A. No. 16-599 in the
Middle District of Florida, and C.A. No. 16-1854
in the District of Oregon. Therefore, it is
reasonable to conclude that Plaintiff continues to
seek the ear of a sympathetic court and is once
again raising identical issues throughout the
country.

2016 WL 7638117, at *3 (citations omitted).

In this case the Court concludes Plaintiff's claims against

HUD are not supported by facts that are, even when accepted as

true, sufficient to state a claim for relief against HUD that is

plausible on its face. The Court, therefore, grants HUD's Motion

to Dismiss Plaintiff's claims against HUD for failure to state a

claim.

## III. Dismissal for Lack of Subject-Matter Jurisdiction

HUD asserts even if Plaintiff had not failed to state a claim, Plaintiff's claims must be dismissed on the ground that the Court lacks subject-matter jurisdiction because Plaintiff's claims are barred by sovereign immunity and Plaintiff has not alleged any basis for waiver of sovereign immunity.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)(citations omitted). *See also Quantum Prod. Serv., LLC v. Austin*, 448 F. App'x 755, 756 (9th Cir. 2011) (same).

"Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). *See also United States v. Mitchell*, 463 U.S. 206, 212 (1983)("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

The test for waiver of sovereign immunity is a "stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-78 (1999)(quotation omitted). Sovereign immunity may not be impliedly or constructively waived, and courts must "indulge every reasonable presumption against

13 - OPINION AND ORDER

waiver."  *Id.* at 678-82 (waivers of sovereign immunity must be

"unmistakably clear").   Any ambiguity in the waiver of sovereign

immunity must be construed in favor of immunity.   *United States*

*v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

**A.    Plaintiff's Claims for Negligence and IIED**

The Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671,

*et seq.*, provides a limited waiver of sovereign immunity.

Specifically, the FTCA is the exclusive remedy for monetary

damages from the federal government for "personal injury or death

arising or resulting from the negligent or wrongful act or

omission of any employee of the Government while acting within

the scope of his office or employment."   28 U.S.C. § 2679(b)(1).

The FTCA provides in pertinent part:

> An action shall not be instituted upon a claim
> against the United States for money damages for
> injury or loss of property or personal injury or
> death caused by the negligent or wrongful act or
> omission of any employee of the Government . . .
> unless the claimant shall have first presented the
> claim to the appropriate Federal agency and his
> claim shall have been finally denied by the agency
> in writing and sent by certified or registered
> mail.

28 U.S.C. § 2675(a).   In addition, 28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be
> forever barred unless it is presented in writing
> to the appropriate Federal agency within two years
> after such claim accrues or unless action is begun
> within six months after the date of mailing, by
> certified or registered mail, of notice of final
> denial of the claim by the agency to which it was
> presented.

The claim-presentation requirement is "'jurisdictional in nature and may not be waived.'" *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1252 (9th Cir. 2006).

Plaintiff does not allege in his Complaint that he filed an administrative tort claim with HUD or that HUD denied an administrative tort claim in writing. In addition, Miniard Culpepper, Regional Counsel in the Office of the Regional Counsel for the New England Region for HUD, testifies in his Declaration that he searched HUD's records of tort-claim notices and did not find any claim filed by Plaintiff.

On this record the Court concludes Plaintiff has not established he exhausted his administrative remedies under the FTCA. The Court, therefore, lacks jurisdiction over Plaintiff's claims against HUD for negligence and IIED. Accordingly, the Court grants HUD's Motion to Dismiss Plaintiff's claims against HUD for negligence and IIED.

**B.   Plaintiff's Claim for Violation of the USHA**

The USHA provides HUD may "be sued only with respect to its functions under the United States Housing Act of 1937." 42 U.S.C. § 1404a. Thus, the USHA provides only a limited waiver of sovereign immunity. Plaintiff, however, does not allege a claim against HUD related to its functions under the USHA. Plaintiff's allegations relate solely to MCHA's placement of Plaintiff on the waiting list for Section 8 benefits, which, as noted, is a

discretionary decision solely within the purview of MCHA.

The Court, therefore, concludes Plaintiff's claim for violation of the USHA does not fall within the limited waiver of sovereign immunity provided under the USHA. Accordingly, the Court grants HUD's Motion to Dismiss Plaintiff's claim against HUD for violation of the USHA.

### C.    Plaintiff's Claim for Violation of the ADA

The Ninth Circuit has made clear that claims for money damages against federal defendants under the ADA are barred by the doctrine of sovereign immunity because the ADA does not contain an unequivocal waiver of the federal government's sovereign immunity. *Dufresne v. Veneman*, 114 F.3d 952, 954 (9th Cir. 1997). Thus, to the extent that Plaintiff seeks money damages from HUD on his ADA claim, that claim is barred by the doctrine of sovereign immunity. In addition, the injunctive relief that Plaintiff seeks in his Complaint can only be granted by MCHA because HUD does not have any authority to control or to direct Plaintiff's placement on the Section 8 housing waiting list.

Accordingly, the Court concludes Plaintiff's ADA claim against HUD is barred by the doctrine of sovereign immunity, and, therefore, the Court grants HUD's Motion to Dismiss that claim.

### D.    Plaintiff's Claim for Violation of the FHA

Courts that have examined the issue have concluded the

FHA does not waive the federal government's sovereign immunity for monetary damages. *See, e.g., McCardell v. Dep't of Housing and Urban Dev.*, 794 F.3d 510, 522 (5th Cir. 2015)("Congress did not make clear an intent to abrogate . . . sovereign immunity from suits brought under the Fair Housing Act."); *Kelly v. Wilson*, 426 F. App'x 629, 632 (10th Cir. 2011)("The United States has not waived its sovereign immunity from suits for money damages under the Fair Housing Act."); *Soniat v. Dep't of Housing and Urban Dev.*, No. 4:16-CV-00337, 2016 WL 7664304, at *3 (E.D. Tx. Dec. 16, 2016)("both the Fair Housing Act and the ADA do not include a waiver of the federal government's sovereign immunity"); *Phifer v. Dep't of Housing and Urban Dev.*, No. CIV S-08-0299 LKK DAD PS, 2009 WL 8706810, at *4 (E.D. Cal. Feb. 2, 2009)(concluding the FHA did not waive HUD's sovereign immunity); *Zhu v. Gonzales*, 2006 WL 1274767, at *5 (D.D.C. May 8, 2006)("the Fair Housing Act does not waive sovereign immunity to permit suits against the federal government."); *Boyd v. Browner*, 897 F. Supp. 590, 595 (D.D.C. 1995)("Because the Fair Housing Act does not unambiguously waive the government's sovereign immunity defense, plaintiffs may not have a monetary recovery.").

The Court adopts the reasoning of these cases and concludes the FHA does not provide a waiver of HUD's sovereign immunity to lawsuits for monetary damages. Thus, to the extent that Plaintiff seeks money damages from HUD for violation of the

FHA, that claim is barred by the doctrine of sovereign immunity. In addition, as noted, the injunctive relief that Plaintiff seeks in his Complaint can only be granted by MCHA because HUD does not have any authority to control or to direct Plaintiff's placement on the Section 8 housing waiting list.

Accordingly, the Court concludes Plaintiff's FHA claim against HUD is barred by the doctrine of sovereign immunity, and, therefore, the Court grants HUD's Motion to Dismiss that claim.

**E.    Plaintiff's Claim for Violation of the NHA**

The NHA provides in relevant part:  "The Secretary [of Housing and Urban Development] shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."  12 U.S.C. § 1702.  Courts that have addressed the issue have concluded § 1702 constitutes a limited waiver of HUD's sovereign immunity.  As one court explained:

> The power given in [§ 1702] to sue the Secretary applies only to activities of the Secretary "in carrying out the provisions" of the designated subchapters.  Thus the Secretary's authority to sue and be sued relate only to his official functions.  *See F.H.A. v. Burr*, 309 U.S. 242 (1940).  Therefore, Plaintiffs' claims can succeed if, liberally viewed, they relate to one or more of the subsections under which the Secretary may sue or be sued.

*Teitelbaum v. U.S. Dep't of Housing and Urban Dev.*, 953 F. Supp. 326, 330 (D. Nev. 1996).  *See also N. Seas Assoc., Inc. v. Payton*

18 - OPINION AND ORDER

*Lane NH, Inc.,* No. 11-CV-0048(JS)(GRB), 2011 WL 6131104, at *3
(E.D.N.Y. Dec. 6, 2011)("The waiver [in § 1702] only applies to
HUD's actions taken pursuant to the specific subchapters
enumerated therein.  Accordingly, the Government does not waive
sovereign immunity as to other actions *not* enumerated in
§ 1702.")(emphasis in original)); *Smith v. Virgin Islands Housing
Auth.*, No. 09-cv-00011, 2011 WL 285858, at *4 (D.V.I. Jan. 28,
2011)("As noted . . ., waivers of immunity are narrowly construed
in favor of the sovereign.  Applying this principle to a federal
agency such as HUD, courts have determined that [the] 'sue and be
sued' provision [of § 1702] . . . is addressed to actions
undertaken pursuant to specifically identified statutes, [and,
therefore,] is inapplicable to conduct that does not fall within
those parameters.").  The Court adopts the reasoning of these
cases and concludes the limited waiver of sovereign immunity
found in the NHA applies only to conduct that falls within
subchapters I, II, III, V, VI, VII, VIII, IX-B, and X of that
Act.

        In his Complaint Plaintiff alleges HUD violated § 1706e
of the NHA, but that section was repealed effective October 1,
1991.  In addition, none of the sections set out in § 1702
relates in any way to wait-list placement for Section 8 housing.
For example, provisions of subchapter I include HUD's authority
to insure banks in certain circumstances, taxation of property

held by HUD, and supplementation of mortgage insurance;
subchapter II relates to mortgage insurance; subchapter III
relates to national mortgage associations, etc.  "The purpose of
[the NHA] is to promote the construction and purchase of
residential housing by creating an extensive system of insuring
home mortgages.  Each of the ten subchapters under which the
Secretary may sue or be sued promotes this basic scheme."
*Teitelbaum*, 953 F. Supp. at 330.  Thus, the allegations in
Plaintiff's Complaint do not relate to any of the subchapters set
out in the NHA's limited waiver of sovereign immunity in § 1702.

        The Court, therefore, concludes § 1702 of the NHA does
not waive HUD's sovereign immunity under the circumstances of
this case.  Accordingly, the Court grants HUD's Motion to Dismiss
Plaintiff's claim against HUD for violation of the NHA.

### F.    Plaintiff's Claims for Violation of the Equal Protection, Due Process, and Privileges and Immunities Clauses

        As noted, Plaintiff alleges HUD violated the Equal
Protection, Due Process, and Privileges and Immunities Clauses of
the United States Constitution.  Individuals do not have a "cause
of action directly under the United States Constitution" for
violation of their constitutional rights.  *Azul-Pacifico, Inc. v.
City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).  In
*Bivens v. Six Unknown Agents* the Supreme Court implied a right of
action by an individual against a federal agent for violation of

20 - OPINION AND ORDER

the individual's constitutional rights.    403 U.S. 388, 397
(1971).    The Supreme Court, however, made clear in *Meyer* that the
right of action implied in *Bivens* does not permit a plaintiff to
bring a claim for violation of a constitutional right against a
federal agency.    *Meyer,* 510 U.S. at 484.    The Court specifically
declined to extend the holding of *Bivens* to permit an individual
to bring a claim against a federal agency or entity for damages
arising from violation of an individual's constitutional rights.
*Id.* at 485.    The Court noted it had "implied a cause of action
against federal officials in *Bivens* in part *because* a direct
action against the Government was not available."    *Id.* (emphasis
in original).    The Court declined to extend *Bivens* on the ground
that "[i]f we were to recognize a direct action for damages
against federal agencies, we would be creating a potentially
enormous financial burden for the Federal Government. . . .   We
leave it to Congress to weigh the implications of such a
significant expansion of Government liability."    *Id.* at 486.

        Thus, to the extent that Plaintiff seeks to bring his
claim for damages against HUD based on violations of the Equal
Protection, Due Process, and Privileges and Immunities Clauses,
the Court concludes such a claim is not permitted pursuant to
*Meyer.*    In addition, although Plaintiff also seeks injunctive
relief, the relief he seeks can only be granted by MCHA because
HUD does not have the authority to control or to direct

21 - OPINION AND ORDER

Plaintiff's placement on the Section 8 housing waiting list.

Accordingly, the Court grants HUD's Motion to Dismiss Plaintiff's claims against HUD for violation of the Equal Protection, Due Process, and Privileges and Immunities Clauses of the United States Constitution.

### G.   Claims under the Administrative Procedures Act (APA), 5 U.S.C. § 704

HUD asserts to the extent that Plaintiff's claims could be construed as proceeding under the APA, Plaintiff's claims also fail because the limited waiver of sovereign immunity in the APA does not apply under the circumstances of this action. Specifically, the APA provides in relevant part that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Here, as noted, HUD does not have any authority or role in the decision whether and where to place applicants on the waiting list for Section 8 housing. Plaintiff has not identified any agency action taken by HUD, much less any final action, that is reviewable in this Court. The Court, therefore, concludes Plaintiff has not established the limited waiver of sovereign immunity in the APA applies to HUD in this matter.

Accordingly, to the extent that Plaintiff's claims are brought pursuant to the APA, the Court grants Defendant's Motion to Dismiss those claims.

22 - OPINION AND ORDER

## III.  Leave to Amend Complaint

The Ninth Circuit has held in the case of *pro se* plaintiffs that "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)(quotation omitted).  As noted, Plaintiff has been advised by numerous courts that his claims against HUD are without merit.  In addition, this Court has concluded Plaintiff fails to establish HUD waived its sovereign immunity as to Plaintiff's claims.

The Court, therefore, declines to permit Plaintiff to file an amended complaint because he cannot cure the deficiencies set out in this Opinion and Order.

Accordingly, the Court dismisses with prejudice Plaintiff's claims against HUD.


## CONCLUSION

For these reasons, the Court **GRANTS** HUD's Motion (#10) to Dismiss and **DISMISSES with prejudice** Plaintiff's claims against HUD.

IT IS SO ORDERED.

DATED this 23rd day of February, 2017.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge